<pre>
                        UNITED STATES DISTRICT COURT
                          DISTRICT OF MASSACHUSETTS

                                    )
COURTNEY THOMAS,                    )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        Civil Action No. 11-10748-DJC
                                    )
SALEM STATE UNIVERSITY              )
FOUNDATION, INC., et al.,           )
                                    )
        Defendants.                 )
                                    )
</pre>

## MEMORANDUM AND ORDER

**CASPER, J.**                                                          October 18, 2011

## I.     Introduction

Plaintiff Courtney Thomas ("Thomas") brings this action against Salem State University Foundation, Inc. ("SSU")[1] and others, alleging that he was wrongly expelled from a graduate program at SSU as a result of racial discrimination and retaliation. Thomas also seeks leave to proceed in forma pauperis. For the reasons set forth below: (1) the motion for leave to proceed in forma pauperis is GRANTED; (2) Thomas is directed to show cause why all claims, except two claims against SSU, should not be dismissed; and (3) the Court orders that a summons issue as to SSU.

---

[1] It is unclear to the Court whether Salem State University and Salem State University Foundation are two separate entities and whether the Foundation is properly named as a defendant in this action. For ease of reference, the Court will refer to Salem State University as the first-named defendant in this action. Should this defendant raise the defense that it has been improperly identified, Thomas will be allowed to amend the complaint to correct the name of the defendant.

## II. Background

### A. Factual Allegations

The following summary is based upon the relevant allegations of the complaint.

Thomas is a Black male who is a teacher of English as a Second Language. In 2009, Thomas matriculated in the Master of Arts in Teaching English as a Second Language program ("MAT ESL") at SSU. His goal was to receive a state license to teach ESL to high school students. During the first semester of the program, Thomas took three classes. He received a final grade of "A" in one course, an "A–" in the second course, and a "B+" in the third course. Thomas believed that a B+ was substandard for a graduate student and worried that the grade would impair his chances at pursuing a Ph.D. in linguistics. Thomas spoke with another male student in the class who is not Black, who told Thomas that he had not really understood the course but had done well in the class. Thomas believed that he deserved a better grade because he had completed all of the course requirements, including doing all of the reading, participating in class, turning in all assignments and completing a challenging group project. Thomas approached the professor, Ellen Rintell ("Rintell"), who was one of the co-coordinators of the MAT ESL program, to complain that the grade did not reflect his ability or industry and that he did not understand why he did not receive an "A." Rintell had "no real answer" for Thomas. Compl. ¶ 17. Thomas expressed his concern the grade was "based on 'emotion' as it pertained [to] [his] membership in a protected class and whatever insufficiencies some may ascribe to such members." Id. ¶ 17(b).

In spring 2010, Thomas enrolled in at least two courses, including English 771. Julie Whitlow ("Whitlow"), the other co-coordinator of the MAT ESL program, was the instructor of the course. Whitlow required the students to write weekly and monthly responses to chapters and units

covered in the course and Thomas received a score of 10 out of 10 on these assignments. During one class period, however, Thomas joked with a female student that the student was not "deep enough" to understand a book Thomas had written. Id. ¶ 20. Thomas' "way of talking, being and especially joking is in keeping with the ways of many members of [his] protected class." Id. Whitlow found the joke to be offensive, although the female student later reassured Thomas that she was not bothered by it. Thomas received a 6 out of 10 on the next assignment. Thomas told Whitlow that he believed the low score was in retaliation for his joke. Whitlow denied the allegation. Thomas "stopped doing almost all the classwork because [he] felt [he] was being discriminated against." Id. Thomas later submitted a letter "up the chain of command" regarding the incident. Id. He was allowed to redo the assignment and wrote a letter "clearing" Whitlow. Id. Although he ultimately received an "A" in the class, "what all this meant to [him] was that if [he] said something that an instructor did not understand or like, she was going to retaliate against [him]." Id.

In March 2010, Thomas sent an email to Rintell concerning discrimination. See Compl., Exs. ("Email #2"; document # 1-1, p. 5). Thomas stated therein that, when he attended Boston Latin High School in the 1970s, a Black and a White student copied each other's work and submitted virtually identical assignments. The Black student received a "B+" and the White student received an "A," even though the teacher could not offer any explanation for the difference in grading. Thomas also stated that, before he came to the United States, he skipped sixth grade but when he arrived in the United States, he was no longer an "A" student. Thomas also pointed out that he had received a four-year scholarship to Stonehill College, but that his English teachers said his writing

was "just OK" even though Thomas had written a 630,000 page book.² Id. Then Thomas posed the question, "If I were to say to Salem's Academic Dean that a teacher is being biased (deliberately for personal reasons, or unconsciously), what standards would have to be met to prove something as subjective as 'teacher bias in evaluating student performance' based on difference in tastes and intellectual approach? I am NOT referring to any particular class or teacher." Id.

In the complaint, Thomas asserts that, at that time, he should have been advised by one of the MAT ESL program co-coordinators, or by another representative of SSU, that he could have complained about discrimination to the campus office of the Equal Employment Opportunity Commission ("EEOC") or the Assistant Dean of Students.

Thomas claims that the email to Rintell was not the only complaint of discrimination that he made to SSU administration:

> I brought the [discrimination] to Salem State University's attention very early on when I first felt discriminated against. I repeatedly brought the issue to Salem State University's attention. I gave Salem State University sufficient time to try to address my complaint. Salem State University ignored my complaints, allowed the harm to continue unaddressed, and so contributed to the worsening of the problem.

Compl. ¶ 31. Thomas felt "defenseless against the harm the discriminatory evaluations were rendering." Id. ¶ 23. "The cultural isolation [he] felt each time [he] went to class at Salem State University, the dismissive attitude of some classmates and some teachers . . . all contributed to a feeling that [he] was on [his] own." Id. ¶ 25. In an effort to "tak[e] control of the situation," he repeatedly challenged his professors "to give more specific and clear instructions of what was expected of student classwork, and how this classwork would be evaluated, every step of the way." Id. ¶ 26. He asked how many citations had to be included in an assignment, the number of pages

---

²In the body of the complaint, Thomas alleges that he wrote a 630,000 word book, rather than a 630,000 page book. See Compl. ¶¶ 14, 26(c).

a report had to be, what the structure of a writing assignment should be, how many sentences had to be in each paragraph, and how turning in an assignment late would affect his grade. He withdrew from a course because he "felt concern about the last minute substitute professor on these issues." Id. ¶ 27.

In the spring 2010, Thomas received a score of 4 out of 10 on an assignment in English 771, the course with Whitlow. Thomas challenged the score. Ultimately, it did not affect his grade and he received an "A" in the course.

In July 2010, Thomas took a one-week intensive course entitled Methods of Teaching Adult ELS ("EDU 722") from Heidi Perez ("Perez"). At the time, Thomas believed that EDU 722 was the proper course to take toward receiving a credential to teach high school. SSU's published list of course requirements for a MAT ESL (Licensure Track) indicated that graduate students were required to take either EDU 722 or EDU 792, the latter being a course entitled Methods and Approaches in Teaching English as a Second Language. See Compl., Exs. ("Evidence #7B"; document 1-1, p. 17). Thomas later discovered that EDU 792, not EDU 722, was the appropriate course for the credential that he sought. Thomas alleges that had he been assigned an advisor, he would not have made this mistake. However, Thomas contends that he did not have an advisor, even though he had requested one and other students who are not Black and/or male were assigned an advisor.

Thomas did not complete the final in EDU 722 by the deadline set by Perez because he was "spent" from working, commuting, and "worry[ing] about the discrimination." Compl. ¶ 37. He received an "Incomplete" grade which was eventually automatically changed in to an "F." In August 2010, Perez assured him that he could still complete the work and that she would even

review a preliminary draft of the assignment.³ Seven months "slipped by" without Thomas completing the assignment. Id.

In December 2010, Thomas took an education course from Sarah Dietrich ("Dietrich"). Thomas completed the assigned work and participated in class. Dietrich stated that she would allow Thomas to submit a draft of the final assignment. Thomas submitted a draft, Dietrich reviewed it and suggested changes. Thomas made the changes that Dietrich suggested but only received a "B" in the class. He spoke to Dietrich about his grade. She changed his grade to a "B+," but he still felt that the grade was discriminatory.

In January 2011, Thomas received a letter from the Assistant Dean of the Graduate School informing Thomas that he would be expelled on February 12, 2011 unless he explained the circumstances surrounding his failing grade in Perez's class. This letter spurred Thomas to complete the final for EDU 722 .

On February 8, 2011, an administrative assistant to Carol Glod ("Glod"), the Dean of the Graduate School, called Thomas and asked him to meet with Glod. The administrative assistant would not reveal the purpose of the meeting, but Thomas agreed to the meeting. Present at the meeting were Thomas, Glod, and Shawn Newton, Assistant Dean of Students ("Newton"). Glod told Thomas that he was making people "uncomfortable" with his complaints of discrimination. Id. ¶ 41. During this meeting, Thomas told Glod that Perez had assured him that he could pass in his assignment late, including resubmitting the assignment if necessary, so there was no issue of his

---

³In support of this allegation, Thomas submitted an August 2010 email exchange with Perez. See Compl., Exs. ("Email #5"; document 1-1, p. 9). The body of the complaint does not specify the timing of Perez's assurance that he could submit a preliminary draft of the assignment.

6

expulsion. Glod said more than once, "Well let's see if you pass the class first." Id. ¶ 42.

The final in Perez's education course was a ten-page lesson plan, although Perez did not specify a maximum page limit. Thomas submitted a twenty-three page draft lesson plan to ensure that he had fully covered everything set forth in the class guidelines. Prior to submitting his draft, he had perused the lesson plan of another student who had passed the class with honors and who was not a member of Thomas's protected class. Thomas believed that he had covered everything that this other student had addressed in her lesson plan. However, on February 15, 2011, Thomas received an email from Perez in which she stated that he had failed the final. Perez stated that the lesson plan "needed to be developed." Id. ¶ 44. Although Perez had previously assured Thomas that he would be allowed to make changes to and resubmit the final assignment, "either because of her own agency or because of those of her superiors," "[t]he draft became the final, and this was 'F.'" Id.

On February 18, 2011, Thomas received a letter from Glod in which she stated that because Thomas had failed the final in Perez's class and therefore failed the class, he was expelled from the MAT ESL program.

Thomas claims that his expulsion from the MAT ESL program was discriminatory and in retaliation for the complaints of discrimination that he had made:

> I contest that Salem State University's substandard assessment of the draft of the 23 page final that I submitted is wrong. It was a draft. I claim that their actions add credence to my claims of discrimination in their assessment of my work. I also claim that, by February [2011], discrimination had caused the situation between me and Salem State University to deteriorate to the point that they wanted me gone. The "F" hid the real cause for my expulsion which was 1) covert discrimination, and 2) retaliation for wanting to be treated fairly by complaining about it.

Id. ¶ 45.

Following SSU's procedures, Thomas appealed his expulsion to Glod and to Kristin Esterberg, Provost of SSU ("Esterberg"). During the pendency of the appeal, Esterberg informed Thomas that he could file a complaint with the EEOC concerning his allegations of discrimination. On March 8, 2011, Thomas initiated an informal complaint of discrimination with the campus EEOC office. He later read online that he could file an administrative claim with the Massachusetts Commission Against Discrimination ("MCAD"). On March 23, 2011, the Provost of Salem University denied Thomas's appeal of his failing grade. The next day, Thomas went in person to the MCAD. An intake employee told Thomas that the MCAD would not address the matter unless it pertained to admission discrimination or sexual harassment. The intake employee referred Thomas to the Office of Civil Rights ("OCR"). Thomas filed a complaint with the OCR that day. He later withdrew the complaint after learning that the OCR could not address all of the misconduct alleged (i.e., fraud and negligence in regards to SSU's representation that EDU 722 fulfilled the requirements for the licensure that Thomas sought) or Thomas' request for damages.

B.     **Claims for Relief**

Thomas summarizes his claims and allegations as follows: (1) SSU discriminated against him because he is Black and male by giving him unfair and substandard evaluations on his academic work; (2) SSU failed to relieve or even address Thomas' allegations of discrimination; (3) SSU retaliated against Thomas for making claims of discrimination by giving him a failing grade in EDU 722, knowing that the failing grade would result in automatic expulsion from the MAT ESL program; (4) SSU does not have in place or execute an adequate policy by which staff members may report claims of discrimination; (5) SSU failed to adequately train its employees to recognize their own discriminatory biases; and (6) SSU committed fraud, negligence, and breach of contract by

8

offering EDU 722 with the false representation that it would fulfill a licensure requirement for those seeking a credential to teach ESL in high school. See id. ¶¶ 1-6.

Thomas names as defendants: SSU; the "Board of Trustees of Salem State University Foundation, Inc."; the President of the "Board of Trustees of Salem State University Foundation, Inc." (Dr. Patricia Maguire Meservey); Esterberg; Glod; Rintell; Whitlow; Dietrich; and Perez. He does not specify particular claims against particular defendants. The complaint simply contains a bullet point list of the laws under which Thomas brings this action: "20 U.S.C. 6301 et seq."; "42 U.S.C. § 1981 et seq., Sec. 601"; 42 U.S.C.A. § 1985(3)"; "42 U.S.C. § 2000e et seq. Sec. 703(a), 704(a)"; "USCA § 1367(b)"; "Public Law 107-110, as amended on 8 January 2002"; "Rehabilitation Act of 1973, sec 504"; "M.G.L. c. 151B and CMR 3.00 et seq."; "M.G.L. c. 151C, §2(d)"; "M.G.L. c. 93A and 940 CMR 3.00"; "603 CMR 7.04." Id. at 1-2.

### III. Discussion

#### A. Motion to Proceed In Forma Pauperis

Upon review of the motion to proceed in forma pauperis, the Court concludes that Thomas is without funds to prepay the filing fee. The motion is therefore GRANTED.

#### B. Screening of the Complaint

##### 1. The Court's Authority to Screen the Complaint

Because the plaintiff is proceeding in forma pauperis, the complaint is subject to screening under 28 U.S.C. § 1915(e)(2). This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). In conducting this review, the Court

liberally construes the complaint because the plaintiff is proceeding *pro se*. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

For the reasons set forth below, the Court finds that Thomas has failed to state a claim for relief against all of the defendants except SSU.

### 2. Title VI (Section 601) of the Civil Rights Act of 1964 and M.G.L. ch. 151C, § 2(d)

Title VI (Section 601) of the Civil Rights Act of 1964, 78 Stat. 252 ("Title VI"), prohibits intentional discrimination based on race in any "program" that receives federal funding. See 42 U.S.C. § 2000d *et seq.* Courts have held that, because Title VI forbids discrimination a "program," individuals cannot be held liable under Title VI. See Whitfield v. Notre Dame Middle Sch., 412 Fed. Appx. 517, 521 (3d Cir. 2011); Price ex rel. Price v. La. Dep't of Educ., 329 Fed. Appx. 559, 561 (5th Cir. 2009); Buchanan v. City of Bolivar, 99 F.3d 1352, 1356 (6th Cir. 1996); Shotz v. City of Plantation, 344 F.3d 1161, 1171 (11th Cir. 2003). Accordingly, SSU is the only proper defendant for a claim under Title VI.

SSU is also the only proper defendant for a claim under M.G.L. ch. 151C. Under this statute, it is unlawful for an educational institution:

> [t]o exclude, limit or otherwise discriminate against any person seeking admission to a program or course of study leading to a degree, beyond a bachelor's degree, because of race, religion, creed, color, age, sex or national origin, or to so discriminate against any student admitted to such program or course of study in providing benefits, privileges and placement services.

M.G.L. ch. 151C, § 2(d). An "educational institution" is defined, in relevant part, as "any institution for instruction or training." M.G.L. ch. 151C, § 1(b). With the exception of SSU, the defendants are not "educational institutions." Therefore, the claims under M.G.L. ch. 151C, § 2(d) fail with respect to all defendants other than SSU.

### 3.   20 U.S.C. § 6301; Public Law 107-110

Thomas states that he is bringing claims under 20 U.S.C. § 6301 *et seq.* and Public Law 107-110. Section 6301 of Title 20 of the United States Code is the first section of the Elementary and Secondary Education Act of 1965, as amended by the No Child Left Behind Act of 2001, Pub.L. 107-110. Thomas does not cite, and the Court cannot discern, any provision of the statute that applies to institutions of higher education. Further, the No Child Left Behind Act does not provide a private cause of action. See Horne v. Flores, 129 S. Ct. 2579, 2598 n. 6 (2009).

### 4.   Rehabilitation Act of 1973

Under Section 504 of the Rehabilitation Act, 87 Stat. 555, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely be reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Because Thomas does not allege discrimination based on disability, he has failed to state a claim for relief under this statute.

### 5.   42 U.S.C. § 1981

Under 42 U.S.C. § 1981 ("§ 1981"), "All persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). This statute "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006); see Fantini v. Salem State Coll., 557 F.3d 22, 33-34 (1st Cir. 2009) (citing Domino's Pizza, Inc. for

11

the proposition that § 1981 requires an allegation of racial discrimination).

The thrust of Thomas's allegations concerning a breach of contract is that SSU misrepresented that EDU 722 was the proper course for him: "Salem State University committed fraud/negligence/breach of contract by offering services (a course) in exchange for money . . . though they knew beforehand that the service offered (the course) was not what the injured party (me) paid for." Compl. ¶ 6. To the extent that any contract existed between SSU and Thomas concerning the appropriateness of EDU 722 for the credential that he sought, Thomas does not allege that the breach of the contract–i.e., the failure to properly identify the course needed for a high school ESL teaching credential–was motivated by racial animus. Rather, Thomas suggests that SSU made this misrepresentation to all students. The required course list that he attached to the complaint, see Compl., Exs. ("Evidence #7B"; document 1-1, p. 17), appears to be directed to all students and potential students.[4] Accordingly, Thomas has failed to state a claim against any of the defendants under 42 U.S.C. § 1981.

Further, a claim under § 1981 against SSU is not cognizable in this Court. The Eleventh Amendment of the United States Constitution generally is recognized as a bar to suits in federal courts against a State, its departments and its agencies, unless the State has consented to suit or Congress has overridden the State's immunity. See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hudson Sav. Bank v. Austin, 479 F.3d 102, 105-06 (1st Cir. 2007).

---

[4]Thomas also alleges that a student seeking an ESL high school teaching credential who used or will use credit for EDU 722 to satisfy graduation requirements "illegally graduated or will [illegally] graduate" and "their degrees are invalid, or will be invalid." Compl. ¶ 63. This allegation suggests that SSU's alleged misrepresentation concerning the suitability of EDU 722 for MAT ESL candidates seeking a credential to teach ESL in high school was not race-based.

As a state university, SSU is an arm of the Commonwealth of Massachusetts. See M.G.L. ch. 15A, § 5; Fantini, 557 F.3d at 33. Massachusetts has not waived, nor has Congress overridden, the state's immunity in regards to a claim under § 1981. See Bakhtiari v. Lutz, 507 F.3d 1132, 1138 (8th Cir. 2007); Johnson v. Walgreen, 980 F.2d 721, 1992 WL 357828, at *5 (1st Cir. Dec. 7, 1992) (not selected for publication).

### 6. 42 U.S.C. § 1985(3)

Section 1985(3) of Title 42 of the United States Code ("§ 1985(3)") prohibits two or more "persons" from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." See 42 U.S.C. § 1985(3).[5] A plaintiff suing under § 1985(3) must allege that "(1) a conspiracy existed, (2) the defendants had 'a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws,' (3) the defendants committed an 'overt act in furtherance of the conspiracy,' and (4) the plaintiff suffered 'injury to person or property, or a deprivation of a constitutionally protected right.'" Uphoff Figueroa v. Alejandro, 597 F.3d 423, 432 (1st Cir. 2010) (quoting Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). A principal element of a civil rights conspiracy is "an agreement between the parties to inflict a wrong against or injury upon another." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)). "Pleading conspiracy under . . . 1985(3) requires at least minimum factual support of the existence of a conspiracy." Arroyo-Santiago v. Garcia-Vicaro,

---

[5] Section 1985(3) also prohibits conspiracies to prevent governmental authorities from providing equal protection of the laws or to prevent an eligible voter from voting in federal elections. See 42 U.S.C. § 1985(3). These portions of § 1985(3) do not appear to relevant to the present action.

13

187 F.3d 621, 1999 WL 551294, at *3 (1st Cir. July 28, 1999) (quoting Francis-Sobol v. Univ. of Me., 597 F.2d 15, 17 (1st Cir. 1979)).

Thomas does not identify, and the Court cannot reasonably infer, facts alleging a conspiracy. Thomas makes only two brief references to a conspiracy. In the summary of his claims, Thomas alleges: "[SSU] insinuated that I was making people 'uncomfortable' because of my complaints of discrimination against my race and gender, and so conspired and retaliated against me by giving me a failing grade . . . ." Compl. ¶ 3. He later alleges: "[T]he University conspired to fail then expel me on my account of [EDU 722]." Id. ¶ 60. However, Thomas does not identify the parties to the alleged conspiracy or that they agreed to deprive him of equal protection under the law.[6] In the absence of allegations identifying the parties to the alleged conspiracy, and factual allegations supporting a reasonable inference that the parties agreed to deprive Thomas of his protected rights, the Court is not required to credit Thomas's conclusory allegation of the existence of a conspiracy. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (under Fed. R. Civ. P. 8(a), court is not "bound to accept as true a legal conclusion couched as a factual allegation" (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986))).

Further, a claim under § 1985(3) against SSU is not viable because a state is not a "person" within the meaning of the statute. See Minor v. United States, 294 Fed. Appx. 295, 296 (9th Cir. 2008); Small v. Chao, 398 F.3d 894, 898 (7th Cir. 2005); Hernandez v. New Mexico, 64 F.3d 669, 1995 WL 490289, at *5 (10th Cir. Aug. 16, 1995); Patterson v. S.C. Workers' Comp. Comm'n, 2011 WL 2559528, at *1 (D.S.C. June 28, 2011); Orria-Medina v. Metro. Bus Auth., 565 F. Supp. 2d 285,

---

[6]In fact, Thomas alleges that Perez did not allow him to resubmit the final in EDU 722 because of "coercion from the Dean," Compl. ¶ 47, not because of a mutual agreement between the two defendants.

14

316 (D.P.R. 2007); Corrin v. S.C. Dep't of Soc. Servs., 562 F. Supp. 579, 585 (D.S.C. 1983) (§1985).

### 7. "USCA 1367(b)"

"USCA 1367(b)" is an incomplete citation to a federal statute. The Court assumes that Thomas is referring to 28 U.S.C. § 1367, which concerns the Court's supplemental subject matter jurisdiction. This statute does not provide a separate cause of action. However, the Court will exercise supplemental jurisdiction over any state law claims in accordance with this statute.

### 8. M.G.L. ch. 151B

Chapter 151B of the Massachusetts General Laws prohibits certain types of discrimination in employment, labor unions, insurance, real estate sales and leasing, mortgages, housing, retail charge accounts, and credit services. See M.G.L. ch. 151B, § 4. Because Thomas does not allege discrimination in any of these areas, he has failed to state a claim under this law.[7]

### 9. M.G.L. ch. 93A

Chapter 93A of the Massachusetts General Laws ("chapter 93A") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. ch. 93A, § 2(a). A party is engaging in "trade or commerce" when it acts "in a business context." Peabody N.E., Inc. v. Town of Marshfield, 426 Mass. 436, 339 (1998) (quoting Lantner v. Carson, 374 Mass. 606, 611 (1978)). However, chapter 93A "does not apply to parties motivated by 'legislative mandate, not business or personal reasons.'" Id. (quoting Poznik v. Mass. Med. Prof'l

---

[7]Section 3.00 of Title 804 of the Code of Massachusetts Regulations, cited by Thomas as a basis for relief, contains regulations promulgated by the MCAD to carry out the provisions of M.G.L. ch. 151B. See M.G.L. ch. 151B, § 3(5).

15

Ins. Ass'n, 417 Mass. 48, 52 (1994)). Here, SSU is a governmental entity, established pursuant to M.G.L. ch. 15A, § 5. In delivering educational services, it was carrying out its statutory mandate. See M.G.L. ch. 73, § 1 ("The state universities . . . shall provide educational programs, research, extension, and continuing education services in the liberal, fine and applied arts and sciences and other related disciplines through the master's degree level."). Therefore, the defendants were not engaging in "trade or commerce" within the meaning of chapter 93A. Cf. Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 26 (1997) (private university not engaged in "trade or commerce" for purposes of chapter 93A when it undertakes an activity in furtherance of its core educational mission).[8]

### 10.    603 C.M.R. § 7.04

Section 7.04 of Title 603 of the Code of Massachusetts Regulations sets forth teacher licensure requirements. It does not provide the basis of a separate cause of action based upon the allegations in the complaint.

### 11.    Claims Against the President and Board of Trustees

In the caption of the complaint, Thomas names the "Board of Trustees of Salem State University Foundation, Inc." and "Patricia Maguire Meservey, Dr., President, Salem State University Foundation, Inc." as defendants. However, he does not mention these parties in the body of the complaint. Because Thomas has failed to allege any conduct by these defendants, he has failed to state a claim for relief against them. See Fed. R. Civ. P. 8(a)(2) (complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Calvi v.

---

[8] Section 3.00 of Title 940 of the Code of Massachusetts Regulations, which was promulgated pursuant to M.G.L. ch. 93A, § 2(c), is similarly inapplicable to the alleged facts.

Knox County, 470 F.3d 422, 430 (1st Cir. 2006) (to state a claim for relief, complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" and "at least set forth minimal facts as to who did what to whom, when, where, and why" (quoting Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66, 68 (1st Cir. 2004))).

IV. **Conclusion**

For the aforementioned reasons:

1. The motion (#3) for leave to proceed in forma pauperis is GRANTED.

2. The Clerk shall issue summons as to SSU and the United States Marshal shall serve a copy of the summons, complaint, and this Memorandum and Order upon SSU as directed by plaintiff with all costs of service to be advanced by the United States. The plaintiff shall have 120 days from the date of this Memorandum and Order to complete service.

3. All claims against SSU, except those under Title VI and M.G.L. ch. 151C, shall be dismissed.

4. If Thomas wishes to prosecute this action against any named party other than SSU, he must, within thirty-five (35) days of the date of this Memorandum and Order, show cause, by filing an amended complaint[9] or other document, why those defendants should not be dismissed for the reasons stated above. Failure to comply with this directive will result in dismissal of all

defendants other than SSU.

---

[9]As an amended complaint completely supersedes the original complaint, see Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 88 n. 2 (1st Cir. 2007), the plaintiff should repeat in the amended complaint any portions of the original complaint that he wishes to include in the operative complaint. In other words, the amended complaint will replace, rather than simply supplement, the original complaint.

17

**So ordered.**

                                                                 /s/ Denise J. Casper
                                                               United States District Judge